If you have a preference. No, no, no, no, that's fine. However you want to organize it. And you're the amicus counsel, and you have ten minutes, okay? How are you going to handle your rebuttal? I'm going to reserve some time for rebuttal, Your Honor. Hopefully, depending on the amount of questions. Very good. Your Honor. Please proceed. Petitioner in this case is Selma Mamigonian, who is the wife of Nishan Simonian, an American citizen, and the mother of two small children, Michael and Maxim, who are both United States citizens. She has the right to adjust her status under United States Code 1255A. What is she presently living? I assume she's living with her family in Sacramento, Your Honor. I've never been to their home. Do you have an address for her? I talked to them on the phone. I've never been to their home, but I'm sure I have an address somewhere. But I'm in constant contact with my client, Your Honor, so if you're ---- I'm just wondering, because apparently the other side is not in constant contact with your client. And the last time I was doing it, God knows it was a long time ago, last time I was doing similar law, you had to sign as your bond, as part of your bond, that you would notify the government as to where you are and where you're living and so on and so forth. And I wonder, has your client kept up to date on that? I don't know. Well, Your Honor, if you are alluding to the fugitive doctrine, I can address that. Is that ---- Yeah. Well, it's the first thing, because if you don't have that, if she's a fugitive, then the ball game is over, as far as you're concerned. I don't agree, Your Honor. The fugitive doctrine is a discretionary doctrine which is rarely applied, and it definitely shouldn't be applied in this case, to allow the government to continue with its illegal actions. And that's why they're raising it to preclude judicial review when they have acted illegally over a period of six years. Where is she? And look, the easiest way for you to answer that is she is located in such and such a place, and you can go find her there any time you want to. But you didn't do that. Isn't that correct? When you saw this thing come up at the beginning ---- Yes, Your Honor. Did you say, she's not a fugitive? She's living in Sacramento. She's not a fugitive. She's at 456 87th Street. You didn't say that, either, did you? Well, actually, I don't know the address offhand, Your Honor, but I'm not sure that that is the case. Not offhand. I'm not suggesting that you would know it offhand, but I'm sure you have it someplace. I can ask. I can ask my clients, Your Honor, if you like me to. But, Your Honor, I don't think that is the heart of the matter. I think the heart of the matter is whether ---- They may not be the heart of the matter, but it's a big stumbling block. And I would join my colleague with respect in asking that you confer with your client, perhaps even while you have amicus counsel arguing, because if she is not here and you don't know where she is exactly and you cannot tell that to the court, then we do have to What we do is another matter, but that is at least one of the issues we have. Because otherwise the court can just be roundly ignored because nobody can enforce anything. I appreciate the sensitivity of this. I appreciate the fact that your client does not want to be apprehended. We get that. But on the other hand, she cannot just thumb her nose at the authorities and not be anywhere, and you not know where she is or be able to tell us and expect to have equity on her behalf. You're asking for us to think of important principles here. But I think just arguing generalities about this doctrine without being willing to disclose where she is, it's not going to get you very far. Well, Your Honor, as far as I know, she's in Sacramento, and I don't know her exact address. You don't know. Well, I don't know the exact address of any of my clients, since I don't generally Let's not be cute. I'm not being cute, Your Honor. Excuse me one minute. Okay. Is the address You want to say that again? One? Okay. Paloma? I think the issue here, Your Honor, is not where she is at the moment, but whether she's participating in these proceedings. And the cases that the – in the few cases, the limited cases that this doctrine has been applied, the – it was because that the appellant or petitioner was not participating, had been out of touch with the court and the attorney for years. That's not the case here. We're participating fully. I'm in touch with my client continually. Within an hour when I call, I get an answer. Counsel, Judge Gould, if I could interject, please. I just thought I would let you know that I also share the concern of – it's been expressed by Judge Tuffy and Judge Smith as to whether this case has to be dismissed. So my perspective is this. I realize she's participating through you, but if we go through, like, a strenuous set of issues and make rulings and she loses, and then she's not submitting to the jurisdiction of the court, you know, what's the purpose of our doing that? Thank you. Thank you, Your Honor. It starts to look like just litigation by lawyers. Thank you, Your Honor, for that question. But this – the issue in this case is not the deportation. If this issue was whether or not the court's going to order deportation of this client, that would be a different matter. Well, let me ask you a question about that not being an issue. I realize there are some theories that have been advanced that suggest that despite the Real ID Act, the district court would have had jurisdiction to review the adjustment of status issue at least for purposes of determining if the agency considered an impermissible factor, if I've got that right. Yes. That it could not review discretionary issues, but could say, agency, you can't consider such and such a factor. You can't decide you're not going to adjust status because you don't like Armenians or other factors that are not correct. However, although that might have some sway before there's a final order of removal, how can we – how can a court give relief on adjustment of status without interfering with the existing final order of removal? You know, let's say that a district court or we were to say that they've got to start over on adjustment of status and not consider X and Y, can she then be deported? Or does that – wouldn't that block the removal order? And doesn't the briefing ask for a stay of that order? Yes. Again, even though it's been – so, I mean, how can we view this kind of relief as not interfering with the final order of removal is my question. Because the final order of removal is not being attacked here and is not in play here. The final order of removal is there no matter what the court decides here. So the court's decision doesn't make a difference that to the extent that the report – that the deportation order is overturned. If the issue was the deportation order, it would be a different issue. But still, Your Honor, I would argue strenuously, this is an equitable document in which the Respondents come in with very dirty hands. They've painted the appellant into a corner. For six years, they've refused to rightfully approve her adjustment of status. They've used one illegal denial after another. They've lied to counsel. They've lied to the court. They've lied to the press. And they have fragrantly refused to follow the law. And painting her into a corner where they say, we're not going to give you your eligibility for all the wrong reasons, for illegal reasons, and either come for deportation and we'll avoid judicial process that way because we'll get rid of you even though you have a right to adjust, you'll never get to court, or if you don't come to deportation, we'll tell the court that they should dismiss the case because you didn't come. Either way, the government has acted wrongly. And it, Respondents should not be allowed to avoid judicial review of their illegal actions by pushing Respondents illegally into the situation. In 2006, Respondent or appellant had a right to adjust her status. They refused that right wrongfully. They admit now it was wrongful. In 2009, she had a right to adjust her status. They refused that right, again, wrongfully, illegally. They illegally denied the adjustment of status a third time secretly, conspiring with the CIS and the ICE. And in December, while I was calling every week and asking for an adjudication and telling them, you cannot deny this on the false claim of citizenship, they already had. Counsel, I appreciate the fact that you are a vigorous advocate for your client. I respect that. But this is not a trial court. We're not a jury. We're an appellate court. We deal with the record. You're talking about stuff that's not in the record. How does that help you? Well, I believe it is in the record, Your Honor. It is in the record that these are illegal denials. It helps me because this is an equitable document. I understand. But we're hopefully reasonable people. We're not here to hurt your client. We want to be able to do what we can under the law. But when you're talking about conspiracies and so on, I don't see that in the record. You're just talking as if we were a jury. And I respectfully don't think that's helpful to you. Can you address Judge Gould's specific legal question that he raised about the finality of the lower court's decision? If you put aside for a moment the fugitive issue, let's talk about that. He asked a specific question. Can you answer that? Yes. It's well established law, Your Honor, that a deportation order is not relevant where there's a right to adjust status. The policy statements of the government have said that since 2007. The Court said that. This Court has said that. This has been established that the adjustment of status overrides any deportation order. So it's irrelevant. An adjustment of status should lie despite any deportation order. So does that mean that deportation order could not be enforced? If the government had your client in custody, they couldn't deport her if we said that she's entitled to another better improved hearing on adjustment of status? They couldn't deport her if the government did their job and correctly applied the law and approved her adjustment of status. But, yeah, but before reaching a conclusion of approval, just if we said they couldn't consider certain factors, the kind of relief that was asked for, but they haven't yet ruled. While they have other proceedings, I take it she cannot be removed. Your Honor, as this Court said in the Kalilu case, it would defeat the purpose of the statute to allow the government to remove people while their adjustment of status application is in play, is rightfully in play, which it should be in this case. So this Court has said that it should not be removed. But the government could remove them without a state of deportation. That's what they're trying to do. They're trying to defeat the purpose of the statute. That's what they've been doing all along. And that should not be allowed. It wasn't allowed in the Kalilu case, and it has not been allowed by this Court. The Court has seen the problem and has said it would defeat the statute to deport somebody who is entitled to adjustment of status, and it stopped the government from doing that in the Kalilu case. And I'm asking the government, I'm asking the Court here to stop the government as well. Okay. Thank you. Do you want to reserve any time? You've got two minutes and 11 seconds. Yes, I'll reserve. So we'll hear now from Amicus Counsel. And let's set the clock separately, Counsel, for 10 minutes for him. And you're not going to take any of the rebuttal time. It's strictly Ms. Gordon. Is that correct? Well, I was going to ask for three of my 10 minutes. Oh, that's fine. That's okay, too. You can do that. Thank you, Your Honor. May it please the Court. My name is Tom Davis, and I'm the appointed Amicus Counsel in this case. And before I begin, I do want to address Judge Gould's question and another issue that Judge Duffy raised. Judge Gould, I believe the answer to that question is the case law, and we cite this in the Amicus brief, is that an alien is allowed to adjust status regardless of whether there is a valid removal order pending. So there is no need to say that, unlike the Morales case, which I know the government relies on, there is no need for this Court to say the removal order is invalid in order to run this question. Now, the follow-up to that is if this Court were to rule that this needs to go back to the district court, presumably they could, Ms. Gordon or the alien's counsel could file for a stay in the immigration courts or a stay below. That would not be a consequence of this Court ruling on the issue. That would be a consequence of subsequent new facts, essentially. I don't believe this Court does not have to address the validity of the removal order, good or bad, in order to rule that adjustment of status needs to follow these procedures. So thank you. Let me just see if I can focus this a little bit. Is it fair to say that the most fruitful area of your appeal is in connection with the adjustment of status under the Federal Question and Jurisdiction and the APA, and not under the habeas and mandamus relief that you sought on the basis that the Real ID Act bars that? Is that a fair statement? Well, I mean, I do think there's actually some confusion. I think that's probably correct. I mean, the question is first the claim. The claim here, of course, is the adjustment of status decision was incorrect. The next question is what statute gives the court jurisdiction to hear that. And we believe that any one of those three would give the court jurisdiction. But this is an APA. This would be review under the APA. Right. Federal Question status, the Federal Question statute gives the district court jurisdiction to hear APA claims. And I think the government agrees with that position. And that's, yeah, I can say that part, that probably is something that's pretty clear. Right. But just so that I know what we can rule out, if anything, do you agree that although there might have been a claim for habeas or mandamus directly to our court, that the district court under 1252 has no jurisdiction to hear that claim? I don't agree with that, but I don't think it's relevant. Because, again, the claim is the same. The question is just what is the jurisdictional hook. And habeas, for a long time, habeas statute is the jurisdictional hook. As long as she's in custody and you can prove she's in custody, then habeas gives the hook. It's really probably not necessary to go to habeas because it's harder to prove than just saying Federal Question. And her petition to the district court clearly raised 1331. So I think that's the question. So 1331 is the one we should be looking at most seriously here, right? I think it's undisputed. Okay. And I think this court can stop there. You don't even have to address mandamus or habeas jurisdiction if there's Federal Question. Counsel, let me ask you another question, because this is sort of a procedural challenge in this case. But would we be able, if we wanted to, could we construe the appeal of the district court's dismissal as if it were a petition for review by our court? As if it was a petition for review from the USCIS directly? That, I am not certain about, Your Honor. I think that the issue, though, is even the government agrees with us. And, of course, it's jurisdictional, so the government's concession isn't binding. But the Real ID Act, the concern is the Real ID Act. The Real ID Act very clearly don't, in the words of the statute, in the words of the statute and in the legislative history, make clear that what the Real ID Act precludes is challenges to the validity of a removal order. And the legislative history, and we cite this in our brief as well, and the language itself say that if it's not a challenge to the removal order, the district court's retained jurisdiction over other matters. And because here adjustment of status for an arriving alien. Now, for an admitted alien, this is what I think this is some of the confusion in this case. An admitted alien, someone who was admitted and then later files for this relief, goes through the immigration court. The immigration court can rule on adjustment of status, and then you would petition this court. But because she was an arriving alien who was not allowed entry at the border, she doesn't have that avenue. And actually, the immigration court made that clear here. She has to go to the district court. And that's what the government has also agreed, that because there is no route through the immigration courts to this court, and because the removal order, I don't think they challenge Real ID in response to our brief. The only avenue, the correct avenue, I believe, is to go to the district court with  And you can't deprive us of jurisdiction under 1331, then, because one of the bases of 1331 is that there's no other avenue. So if you do have an avenue in the district court, then you don't meet the qualification under 1331, do you? For a petition for review to this court directly? Here. Yeah. Right. Yeah. Well, and I don't think that there's been an argument here that this should be construed as a petition for review. I don't think that this Court needs to address that issue, because I think clearly there's a route to the district court here.  So you want us to stick with the district court. You're not you don't want to go on it as if this were, as Judge Gould suggested, a direct appeal to this Court. Well, Your Honor, I mean, I don't having that. I'm not saying we can do that, by the way. No, I mean, and not having that been an issue that was raised by either side in this case is amicus. I'm not comfortable in answering that. Okay. All right. But I do think that clearly the district court is a proper venue here, and I don't think there's. Okay. So you're sticking with the district court. That's your story, and you're sticking with it. Well, I'd be happy to submit a supplemental brief on that issue, Your Honor. But I think that for purposes here, you can clearly, the district court. Yeah. I think I would suggest we just focus on the district court at this time. Okay. And if in conference our panel wants to pursue the other, to consider the other issue, we can always call for order supplemental briefing. Yes, Your Honor. Okay. And so then I will then. Oh, and then let me also briefly address the Fugitive Disentitlement Doctrine, because I think as a legal, I'm coming at this as amicus, just looking at the record like the Court is. And I believe that the case law on this site, this case law, was the Sun case from this Court and the Brar case, which is unpublished, but it's built on Brar. I make it clear that that's the government's burden. The government has to come forward and prove that the alien isn't hiding and avoiding deportation. And I understand the questions the Court was asking the counsel are valid questions, but the legal issue, there's two steps. First, they have to prove, they have to get over, I almost say a prima facie case. They have to show that the basic elements for the doctrine are met. What they argue in their brief, the only thing they argue is that she did not show up at the airport to essentially remove herself. And the Sun case is crystal clear that that is not sufficient to meet that standard. Second, even if the standard was met, which we don't believe it is on this record, it is an equitable doctrine and the Court is not required to apply it. And I think that the Supreme Court has said, and I think other courts have said, that justice is generally better served to hear cases on the merits. I mean, this case has some difficult and novel legal issues in it. And amicus has been appointed. And there's certainly some issues here with the government attempting to deport her mid-appeal in apparent contravention of its own policy here. So I think that given the unusual circumstances of this case, and particularly when the government concedes that, you know, we are, the USAIS, when they denied her adjustment of status, they did it in direct contravention to the immigration court's ruling that she had not entered this country through fraud. I mean, if you add these all together, this is not a good case to just dismiss what the government does. Kennedy, I appreciate that argument because that's a rational, straightforward argument based upon the law and the case law. I do have some questions for the government about whether, in fact, it has met its burden, but you can understand why every member of this Court, the real simple question was, I mean, if she were here, that answers the question. We know where she is. That answers the question. I don't have to get into that. But I appreciate very much your scholarly approach to it. And coming, all I have is a record, too, Your Honor. So that's what I would say, based on Amicus's review of the record, is that there's not sufficient proof of that here. Do you want to save any time? You've got a minute and 50 seconds. Whatever you want to do, that's fine. Oh, this, I have two minutes left in total? Correct. Not even that. I will save two minutes for a question, Your Honor.  You can save a minute and 42 seconds. There you go. Okay. Let's hear from the government. Go ahead. May it please the Court. My name is Audrey Hemmestath. I'm from the U.S. Attorney's Office in Sacramento. To me, the fact that Ms. Mamagonian is not here today speaks volumes and makes this a relatively easy case. I do understand the emotion that Petitioner's counsel is expressing, that she's painted into a box. It isn't a box that the government is making. The decision to come to this country and the manner in which she arrived, the circumstances of her presentation at the airport, through the pursuit of remedies in immigration court and before USCIS, have resulted in a long passage of time, and I appreciate that. Let me ask you a few questions, counsel. This obviously is a doctrine that is very rarely applied, and only under the most stringent circumstances. And the government does, as was pointed out by Amicus Counsel, bear the burden to show that it should be applied. Correct. Does the government know, other than what the gentleman out here today gave us, are you aware of Ms. Mamagonian's location? No. We're not playing games. We truly have looked for her and not found her. How recently? We filed the motion to dismiss under the Fugitive Disentitlement Doctrine, I believe, about six months ago. I believe that was the last time when the active search was going on. I can provide an updated declaration from ICE Enforcement, which is the operations I'm not obviously involved with. And do you know where that is in the record, at least what was submitted at that time? Sure. There's a declaration to go along with the original motion to dismiss under the Fugitive Disentitlement Doctrine. Okay. It's on the docket. I'm not sure what the docket is. Okay. All right. All right. Big picture, what I see the Court here has three options. One is dismissal under the Fugitive Disentitlement Doctrine, and I would urge the Court to do that. The other would be to affirm the district court's dismissal of the case in its entirety. The third would be remand to the district court for further litigation. I want to take a moment to discourage the Court from that third option. I don't think anything productive comes from that. Let's go back for a moment to what Mr., I believe, Davis indicated earlier in response to a question from Judge Gould. We talked a little bit about 1331, and if this had been an appeal directed to this court and there were no other avenue, that we would have jurisdiction to hear that. And if we disagreed with what had been done, we could send it back. Do you agree with that? You would have jurisdiction under the Jurisdiction to Consider Jurisdiction line of cases. Right, right, right. Yes. If this case had been only CIS denies an application for adjustment of status, you come into district court under Federal question jurisdiction. We have those fairly routinely. The district court makes a decision and then that's appealed to the Ninth Circuit.  We would make the same arguments that we've made here that it's a district court. I understand. Let's assume for a moment we put that aside. So Mr. Davis has indicated that we should in fact stick with the district court. And at least based on my research, the real ID kind of blocks that, at least in terms of mandamus and habeas. Do you agree with that? On all of the peripheral issues other than just the adjustment of status application, yes, the district court got it right. There was no jurisdiction to issue a TRO. There was no jurisdiction for a stay. And the same jurisdictional problem flows to this Court. Judge Gould asked earlier about the possibility of converting to a petition for review. There was a petition for review in this case. Different docket number. I think it's 11-70767, which came out of the Board of Immigration Appeals, which was doing parallel litigation in this case at the same time. I believe the posture of that case was Ms. Mamagonian filed a motion to reopen before the immigration judge. And all of this is with a stay requested as well. Appealed that denial to the Board of Immigration Appeals. The Board ultimately said no, time barred. So basically from the government's perspective, she has pursued a variety of remedies, has been unsuccessful in those, and in effect this is a collateral attack. Is that in effect what we're talking about here? On everything but the adjustment of status application. Okay. On the adjustment of status, it's a direct attack. And it is proper Federal question jurisdiction. But beyond the court's jurisdiction, because it is entirely a discretionary denial. Okay. And that's our issue. Counsel, Judge Gould, if I could pose a question. Just I'll try to keep it simple. If the district court looked at it and said something is amiss on how the agency handled adjustment of status, and I'm going to say they should not consider factors X, Y, and Z, and I send it back to them, and did no more. And, you know, didn't stay the removal order. Didn't give any relief other than saying there was a mistake on adjustment of status. What would be the result? Would the government try to deport Ms. McGonian under the final order of removal? Or would they stand down and wait for, you know, for what would happen further? It could. There wouldn't be any bar to going forward on the removal order, because there is no judicial or administrative stay of removal in place. Whether or not it would, I'm not the operations person, so I don't want to overspeak, but there have been administrative stays of removal granted in this case to allow her to pursue the adjustment of status application. I can't see them going forward with a removal order in the face of a district court order that says that there are serious errors in the administrative decision. That would surprise me. But that doesn't mean that they wouldn't have the legal authority to do it. Okay. Thank you. Do you remember when those administrative stays were issued and where it is in the record? Give me a minute. Okay. If I recall correctly, an emergency panel of our court issued a couple of stays at some point. Well, actually, Judge, the government requested emergency consideration when the temporary stay of removal went into effect under the Ninth Circuit general order, and emergency consideration was denied by this Court because removal in progress, it was our stated basis for the emergency consideration, was deemed not to be an emergency. I see. Okay. Thank you. Then the panel considered the merits of the stay and ultimately denied it. So there is no stay in place. That's under the PFR, the 117767. So basically, any stays that were granted were through administrative grace, if you will. Correct. And there was more than one. Is that correct? That I don't remember. It is in the record. I didn't write the date down. Would you mind, given that I don't want to take up your time, if you give us a 28-J letter, of course, you could copy it, opposing counsel, because that is a factor to consider in the equities of the whole thing. Yes. Yes. Could I ask you a practical question, please? Yes, Your Honor. On the fugitive disentitlement issue. When the government looks for someone like Ms. Mamagonian, what is it that they do? Are these ICE enforcement people? Or do they send the FBI out? No. They don't do that, okay? What do they do? Sorry to interrupt. ICE is law enforcement. They do their own operations, procedures. I don't want to disclose too much, but this is a local Sacramento case. So I was in touch with the ICE office while they were deciding what to do with this case. They are ultimately of limited resources. There are just a few agents within that office that are involved in the DRO detention removal operations aspect. But from their perspective, they have a final order of removal, and they have travel documents which factor into this that are only valid for a certain period of time. So in this case, she was already on a plane. She was in a layover at Dulles when this Court entered the general order temporary stay of removal. So in order to capitalize on those travel documents they already had, a second attempt was made to remove her, and that's the one that she did not appear for. That's the one she didn't show up at the airport. So that's how we got here. From my perspective, Judge Burrell got it right. This was an easy case when it came in. Jurisdiction is not here in Federal court. He did not have jurisdiction to enter temporary restraining order. I think that's a good decision.  I think it's a good decision to have the Federal court decide that this Court is going to remove her, that leaves ICE free to do what they want to do operationally, although I appreciate Your Honor's concern about how far down the path we've gotten since that moment. But I don't think this Court should have too much heartache about the actual adjustment of status application because I think it's a good decision. And as a matter of fact, if you look at motions that we have here, and this is a fairly long discussion, and CUI wrote and articulate long denial citing its discretion, citing the negative factors, the positive factors, weighing them and articulating its thoughts. Under all of this court's cases, mandamus, habeas, Federal question jurisdiction, this doesn't meet any of the exceptions. This is a discretionary decision. Are there no further questions? Any questions? Thank you. No questions here. Thank you. Thank you. Very well. So let's see. Ms. Gordon, you've got just a little over two minutes. I know. I'd like to clear up a few things. The real ID does not bar jurisdiction in this case, Your Honor. It's irrelevant because there is other jurisdiction, but all the cases that I cite, for instance, Sink v. Gonzalez. What other jurisdiction are you referring to? Federal question jurisdiction, APA jurisdiction, mandamus jurisdiction. I don't think we need to get into it. There was jurisdiction. We do need to get into it. Okay. I wanted to do that with my original time, Your Honor, but there is habeas jurisdiction. It's not barred by the real ID Act. See Sink v. Gonzalez and Alley v. Ashcroft. It's only barred if they are seeking review of a removal order, which this is not. It has to be a direct attack on a removal order, which this is not. The habeas jurisdiction, Your Honors, is to review the illegal action of the agency, which is in the record, Your Honor, in a declaration that I filed and also in the record in the denial of the denial that was made the day after or the two days after I filed this habeas and other actions. They denied the case. It was actually for the fifth time. Two of them were secret, but they mention it in their denial. They had actually already denied the case, lied to me about it, in December. This was February when I filed this. Then they reopened it and denied it again in January, and neither of these denials were issued to counsel or to the Respondent because they were holding these until they could deport Silva and preclude judicial review. This is in my declaration, which is in the record, and it's right in their denial that they made all those. And I was told by Michael Biggs, who is one of the defendants here, that the CIS was denying it on the basis of false claims of citizenship, which had already been barred by the Immigration Court. But they maintained, we don't care. We are not bound by what the Immigration Court said. And they were bound. They were collaterally estopped from raising preconceived intent or raised judicata. And the case that the government cites to say that they're not estopped, the Duval case, actually says specifically that they are estopped, that the government, the agency is estopped from any further litigation once the litigation was final. Okay. Your time is up. Thank you very much. Thank you. Mr. Davis. It's David. Mr. Davis. Oh, I'm sorry. No, it's Mr. Davis. It is Davis. I thought that's what they wrote. But we want to call you by your right name. We apologize if you got it wrong. It is Davis, right? Correct. Okay. Thank you. I just want to make two quick points, Your Honor, I believe. The first is you were asking about the earlier affidavit that the government filed in this case. It's actually, if you look at my reply brief at page 3, footnote 2, I cite to that. And that's actually, it was this Court's docket number 44. That affidavit essentially just said what the government said in this brief, that she was supposed to show up at the San Francisco airport at some time. She didn't. And then there's one line that says, I believe, quote, they attempted to make numerous attempts to contact her with unsuccessful results. But they don't say they went to her house or anything like that. Putting aside the fugitive doctrine for a moment, if you had your druthers, what would you want us to do in this case? Your Honor, I believe that the correct answer to that is this Court should remand to the district court so it can review the substantive challenge to the USCIS decision. But what's important to the government, the government really is not relying on what the district court said. They're relying on this alternative discretionary bar. But they don't dispute as a matter of law that that bar is subject to several exceptions. They can call it discretionary, but if it violates legal principles, constitutional principles, and so forth. And in your case, what specific exceptions to the discretionary bar would you use as the criteria that we rely upon to send the case back to the district court? Well, to start with, remember, this case was filed and it was dismissed by the district court in two days. So we have a very limited record. I understand. Even based on what we have here, I think that our brief sets out at least three issues that I see. And there's probably more. The first one is We're in your brief. I mean, we've read it. But just for reference purposes. The first one is the use of improper factors. And the first one is ignoring the law of the case res judicata. They made a finding and they admit directly in contravention to the immigration court ruling.  All right. The second, preconceived intent. This is a question of law, which, again, they agree. Preconceived intent has a specific meaning. They found that she, based on their fact finding, that she hoped to remain in the United States and had relatives here. And they said that shows you have a preconceived intent. This Court's case law, long-line case law, they don't dispute, said that is not enough. Just because you hope to remain in the United States is not legally sufficient to say you have a preconceived intent. And then there's the potential bias claim and there's other constitutional claims that she might be able to raise. So based on just what's in this limited record, the district court should make that initial decision. Thank you, Your Honor. All right. Thank you both. Thank you, all three of you, for the argument. And the case just argued is submitted.
judges: Duffy, Gould, Smith